

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00116-CR

DEQUAVIOUS EUGENE SANDERSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC89-CR2019-0319, Honorable Charles M. Barnard, Presiding

March 29, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, Dequavious Eugene Sanderson, appeals his conviction for burglarizing a habitation while committing or attempting to commit a felony. He raises six issues for consideration. We affirm.

***Background***

Appellant was arrested for the 2018 burglary of the Taings's home. During same, Sakoun Taing was shot in an exchange of gun fire. Appellant's arrest came after law enforcement received information from a confidential informant and from an anonymous

tipster that appellant was involved in a series of burglaries. That, coupled with other evidence including cell phone "pings," led police to him.

Through the cell phone data, police located an SUV in which appellant rode and stopped it. Its occupants fled on foot. As appellant followed suit, he discarded clothing and a 9mm handgun, but police succeeded in discovering both him and the discarded items. Additionally, a search of the SUV yielded other evidence, including pairs of Reebok shoes sized 10.5 and 12.

Thereafter, law enforcement compared bullets and casings from the Taing burglary to those from the handgun appellant discarded. They matched. DNA evidence taken from appellant also matched that found at the Taing burglary scene. As for the Reebok shoe found at the same scene, appellant told a third party (via a recorded jail call) that law enforcement had his shoe. Upon hearing that and other evidence, a jury found him guilty of the aforementioned offense.

***Issues One and Two—Confidential Informant and Anonymous Tipster***

Appellant's first two issues concern Texas Rule of Evidence 508, a crime-stopper tip, the non-disclosure of the tipster's identity, and the trial court's refusal to peruse the crime-stopper tip *in camera*. We overrule the issues for the following reasons.

First, "the crime stoppers statute specifically prohibits disclosure of the identity of a crime stoppers tipster," *In re Hinterlong*, 109 S.W.3d 611, 624 (Tex. App.—Fort Worth 2003, orig. proceeding), except as required under the state or federal constitutions. *Dunn v. State*, No. 14-98-00721-CR, 2000 Tex. App. LEXIS 2569, at *5–6 (Tex. App.—Houston [14th Dist.] April 20, 2000, pet. ref'd) (mem. op., not designated for publication); *accord* TEX. GOV. CODE ANN. § 414.008(d) (stating that records of a crime stoppers organization

2

cannot be produced in a way that identifies the tipster "unless the state or federal constitution requires the disclosure of that person's identity"). *See also* TEX. GOV. CODE ANN. § 414.009(a)(2) (prohibiting the disclosure of the tipster's identity unless required by law or court order). At bar, appellant cites us neither a Texas nor United States constitutional provision requiring disclosure of the tipster's identity. Instead, he relies on Texas Rule of Evidence 508, which lacks constitutional imprimatur. Nor does such an evidentiary rule trump the statutory directive in sections 414.008 and 414.009. *See Distefano v. State*, 532 S.W.3d 25, 37 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (stating that "[a]n evidentiary statute trumps a rule of evidence adopted by the courts"); *Hitt v. State*, 53 S.W.3d 697, 704 (Tex. App.—Austin 2001, pet. ref'd) (stating same).

Second, section 414.008 of the Government Code also addresses the discoverability of general crime stopper records. Normally, they are undiscoverable, except in two instances. One involves production in civil cases, the other in criminal proceedings. Regarding the latter, one desiring the records must move for same and allege they "contain[] evidence that is exculpatory to the defendant in the trial of that offense." TEX. GOV. CODE ANN. § 414.008(b)(1). Appellant said nothing of this statute in his brief. Thus, the issue is inadequately briefed.

Nevertheless, the edict provides that 1) a "court may subpoena the records or report" and 2) shall conduct an in-camera inspection of materials produced under a subpoena to determine if they contain "exculpatory" evidence." *Id.* at § 414.008(c)(1) (emphasis added). Any duty to so subpoena and inspect, however, does not arise upon the mere demand for same. Rather, one seeking them must first make "a plausible showing to the trial court, through sworn evidence or agreed facts, that [the records

3

contain] . . . material exculpatory evidence that would create a probability of a different outcome." *Proctor v. State*, 319 S.W.3d 175, 184 (Tex. App.—Houston [1st Dist.] 2010 pet. dism'd). Appellant provided the trial court neither "sworn evidence" nor "agreed facts" suggesting that information in the records would create such a probability. He provided only surmise and, therefore, failed to trigger any obligation of the trial court to either obtain or peruse the crime-stopper records.

### *Issue Three—Admission of Cell Phone Evidence*

Through his third issue, appellant contends the trial court reversibly erred when it denied his motion to suppress evidence of real-time cell-site location data used to determine his situs prior to arrest. The data consisted of approximately eight cell phone pings over a two-hour period. Allegedly, a warrant should have issued to justify the pinging. Failing to obtain one violated his Fourth Amendment rights as well as those under section 9 of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure, said appellant.[1] We overrule the issue.

The threshold question is whether a particular government action constitutes a "search" or "seizure." *Sims v. State,* 569 S.W.3d 634, 643 (Tex. Crim. App. 2019). When the activity involves tracking one through their cell phone, whether it constitutes a search or seizure turns on the quantum of data obtained. That is, it depends on whether the government searched or seized "'enough'" information to indicate it transgressed upon a legitimate expectation of privacy. *Id.* at 645. Moreover, no bright-line rule exists to

---

[1] Article 38.23 reads in pertinent part as follows:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted . . . against the accused on the trial of any criminal case.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

determine this.  *Id.*  Rather, the matter "must be decided on a case-by-case basis."  *Id.* at 646.  Yet, the Court of Criminal Appeals did provide a guideline in *Sims.*  It appeared within its holding that "[a]ppellant did not have a legitimate expectation of privacy in his physical movements or his location as reflected in the less than three hours of real-time CSLI records accessed by police by pinging his phone less than five times."  *Id.*

Here, appellant was found on a public road.  Furthermore, the time period during which the pings transpired was much shorter than that in *Sims.*  It did not occur over multiple days which was of concern in other cases.  *See e.g., Holder v. State*, 595 S.W.3d 691, 703–04 (Tex. Crim. App. 2020) (noting that "the third-party doctrine alone cannot defeat a person's expectation of privacy in at least 23 days of historical" cell phone data).  Relatively few pings over a short duration, like those in *Sims,* minimize the risk of revealing the "'privacies of [appellant's] life,'" which could give rise to an infringement on a legitimate expectation of privacy.  *Id.*  Given this, we follow the legal and factual guidance of *Sims.*  That leads us to conclude that the trial court could well have found appellant lacked a legitimate expectation of privacy under the circumstances at bar.  Thus, we cannot say its decision to forego suppressing the evidence resulting from the police tracking his movement via his cell phone constituted error under either the United States or Texas Constitutions.  *See State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019) (holding that the decision to grant or deny the suppression of evidence is reviewed under a bifurcated standard of review such that fact findings are reviewed for an abuse of discretion and applications of law are reviewed de novo); *see Holder v. State,* 595 S.W.3d at 702–04 (applying the Fourth Amendment and section 9 of the Texas Constitution similarly).

### *Issue Four—Evidence of a Text Message*

By his fourth issue, appellant argues that the trial court erred when it overruled his Texas Rule of Evidence 403 objection. The objection concerned the admission of text messages sent to a juror through appellant's arrangement. The messages were sent after the State had rested but before the jury adjourned to deliberate guilt. The trial court found the messages relevant as evidence of appellant's consciousness of guilt. Then, it allowed the State to reopen its case for the purpose of admitting evidence of the texts and the circumstances surrounding their delivery to the juror.

The standard of review is abused discretion, as explained in *Martinez v. State*, 327 S.W.3d 727, 736–37 (Tex. Crim. App. 2010) (involving an objection founded on Rule 403). We apply it here.

Next, Texas Rule of Evidence 403 allows the trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." TEX. R. EVID. 403; *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Determining that involves balancing various factors. They include: 1) the inherent probative force of the evidence; 2) the proponent's need for that particular evidence; 3) the tendency, if any, of the evidence to suggest a decision on an improper basis; 4) the tendency, if any, of the evidence to confuse or distract the jury from the main issues; 5) the tendency, if any, of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and 6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The text messages read as follows:

Vote not guilty on ur [sic] decision will not let anyone else in the jury persuade you to give a guilty decision or innocent verdict the verdict is not unanimous it b [sic] judge a Mistral

This is exactly what it is a Mistral the state forgetting all circumstances evidence none of evidence 100% sure under reasonable doubt

The defendant commit any crime

Four different DNA in the shoe doesn't place the defeat at the time of crime only partial DNA from the defants [sic] found out of the four which was touch DNA there is no DNA or finger prints found on the gun that is the defants [sic]

That doesn't link the defant [sic] to the gun

The juror who received it testified at a hearing outside the jury's presence. He described receiving the text while at home shortly before 10:00 p.m. It caused him some confusion as he pondered "what's this all about . . . ." Yet, he "wasn't scared, per se," though his personal safety was a concern. He illustrated the latter through his statement, "I just wanna make sure that I'm – I'm safe . . . ." And, in attempting to resolve his confusion, he asked his fellow jurors the next day whether they received a text message. None responded in the affirmative, though one quickly glanced at the witness' phone and the text appearing on it.

The trial court received other evidence while performing its gatekeeping function. It consisted of testimony linking appellant to the message's delivery. In short, appellant wrote the message and arranged for another pretrial detainee to forward it to appellant's girlfriend. The latter then sent it to the juror.

Ultimately, the State argued that the message constituted admissible evidence reflecting appellant's consciousness of guilt. Appellant invoked rule 403 in response and asked the trial court to exclude it. The trial court denied the 403 objection and decided to admit the evidence.

For purposes of our review, we initially conclude that the text evinced a consciousness of guilt. This is so because it can reasonably be read as implicitly intimidating. Indeed, the recipient read as much into it given his voicing safety concerns. Moreover, we have considered an accused's effort to intimidate as evidence of a consciousness of guilt.[2] *See e.g.*, *Harrison v. State*, No. 07-08-00155-CR, 2008 Tex. App. LEXIS 8299, at *3–4 (Tex. App.—Amarillo Oct. 30, 2008, pet. ref'd) (mem. op., not designated for publication) (so characterizing appellant's effort to intimidate the child victim during trial). We have also characterized evidence of one's consciousness of guilt as one of the strongest types of evidence illustrating guilt. *Leoning v. State*, No. 07-18-00213-CR, 2019 Tex. App. LEXIS 10427, at *8 (Tex. App.—Amarillo December 2, 2019, no pet.) (quoting *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.)). So, it can be said that the evidence at bar was relevant to the issue of appellant's guilt.

Its need, though, is another question. Indeed, an earlier ruling of the trial court indicated it was technically unnecessary. The ruling to which we allude is its decision to deny appellant's motion for an instructed verdict. Again, the texts occurred after the State completed its presentation of evidence. By that time, the trial court had denied appellant's motion for an instructed verdict. In denying it, the court obviously found the State's evidence enough to permit the juror to hold appellant guilty beyond reasonable doubt.

---

[2] The witness' concern for his safety evinced the intimidating nature of the text.

The evidence being sufficient, one can reasonably argue that more evidence of guilt was unnecessary. Yet, there is nothing like a confession to prove guilt. It tends to remove all doubt. Furthermore, evidence of a consciousness of guilt likens to an implicit confession. *Id.* at 2019 Tex. App. LEXIS 10427 *8. So, it can be said that the texts had rather high probative value even if a conviction could be had without them.

That their admission posed a risk of confusing or distracting the jury or influencing a decision on an improper basis cannot be discounted, though. After all, the juror who received them experienced confusion and voiced concern for his safety. Such can distract from the matter at hand, that is, assessing guilt based on the evidence. It also would be reasonable to think that the texts would have like impact on the other jurors. In fact, they queried the trial court about their safety after deliberating and revealing their decision to convict appellant. Nevertheless, the trial court had instructed the group to restrict their consideration of the text to the topic of appellant's consciousness of guilt. We presume the jury followed that instruction. *See Perez v. State*, 562 S.W.3d 676, 694 (Tex. App.—Fort Worth Sept. 27, 2018, pet. ref'd); *Adams v. State*, 179 S.W.3d 161, 165 (Tex. App.—Amarillo 2005, no pet.). And, providing such an instruction factors into the overall 403 equation and the existence of abused discretion. *Leonig* v. State, 2019 Tex. App. LEXIS 10427, at *8 (noting the presence of a limiting instruction when concluding that the trial court did not abuse its discretion in overruling the rule 403 objection). Additionally, we note that while the jurors may have had questions about their safety, little else suggests that they either ignored the instruction or acted on anything other than the overwhelming evidence of appellant's guilt.

In short, the circumstances underlying the trial court's 403 ruling provide no clear cut answer to whether the probative value of the text was substantially outweighed by the danger of unfair prejudice. Excluding the texts may have been the better course of action, given the other evidence of guilt. But, that is not the test. Rather, the test for abused discretion revolves around the zone of reasonable disagreement. Can reasonable minds only conclude, under the circumstances, that the risk of unfair prejudice **substantially** outweighed the value of evidence akin to a confession . . . we say not. The clear disparity needed between the risk of prejudice and the probative value of the evidence is absent here. *See Hernandez v. State,* 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (stating that "it is only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable"). Therefore, we overrule the issue.

### *Issue Five—Mistrial*

Appellant next argues that the trial court erred in denying his motion for mistrial once he contacted a juror. The standard of review again is one of abused discretion. *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016). And, upon applying it, we overrule the issue.

As said by the court that transferred the cause to us: "'[t]here is no room in our profession for the playing of games." *Carlile v. State*, No. 02-19-00468-CR, 2021 Tex. App. LEXIS 9509, at *24 (Tex. App.—Fort Worth Nov. 24, 2021, pet. ref'd) (mem. op., not designated for publication) (quoting *Ortega v. State*, 644 S.W.2d 912, 913 (Tex. App.—Fort Worth 1983, no pet.) (en banc)). Nor may a defendant create reversible error by his own manipulation. *Id.* This principle finds iteration in the rule holding that appellate relief

is unavailable when the defendant himself was the source of an impermissible conversation with jurors. *Id.* Applying the principle here leads us to hold that the trial court did not abuse its discretion when refusing to reward appellant with a mistrial for his own misconduct, that is, for improperly communicating with a juror.

### *Issue Six—Denial of Motion for Mistrial After Law Enforcement Comment*

In his last issue, appellant contends the trial court abused its discretion when it denied his motion for mistrial after a police officer mentioned that appellant was a suspect in other burglaries. We overrule the issue.

Appellant described two instances of objectionable utterances. They concerned a witness volunteering unsolicited information alluding to appellant's involvement in extraneous criminal activity. The first met with no objection. An objection and request for mistrial followed the second. In overruling the objection and denying mistrial, the trial court instructed the jury to disregard the answer. These circumstances provide us the reasons overruling the issue.

First, appellant having previously allowed like evidence to be mentioned without objection renders harmless any mistake involving admission of the subsequent evidence. *Crenshaw v. State*, No. 02-14-00192-CR, 2015 Tex. App. LEXIS 3298, at *5–6 (Tex. App.—Fort Worth April 2, 2015, no pet.) (mem. op., not designated for publication). Second, we presume that the jury followed the trial court's timely instruction to disregard the second unsolicited response. *See Thomas v. State*, 461 S.W.3d 305, 311 (Tex. App.—Fort Worth 2015, no pet.) (stating that the jury is presumed to follow court's instructions and a defendant must rebut the presumption by pointing to evidence that it did not). Nothing we encountered suggests it did not. Thus, denying mistrial was not an

instance of abused discretion. *McBurnett v. State*, 629 S.W.3d 660, 664 (Tex. App.—Fort Worth 2021, pet. ref'd) (concluding that the trial court's prompt instruction to disregard the officer's reference to McBurnett's incarceration cured the error).

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice


Do not publish.